BERGEN v BAKER

Docket No. 248214. Submitted November 9, 2004, at Detroit. Decided
    November 18, 2004, at 9:05 a.m.

James A. and Vickie L. Bergen brought an action in the Oakland
    Circuit Court against Kenneth L. and Karen S. Baker, alleging,
    among other things, fraud and negligent misrepresentation con-
    cerning a leaking sunroom roof and skylights in a house the
    plaintiffs purchased from the defendants. The seller's disclosure
    statement required by MCL 565.951 *et seq.* indicated that there
    had been a leaking roof and skylights, but the roof had been
    replaced in 1998. Not on the disclosure statement was the fact that
    the defendants had hired a glass company to repair the skylights
    again in 1999. The court, Rudy J. Nichols, J., granted summary
    disposition for the defendants because the plaintiffs had hired
    their own inspector before the sale and the parties proceeded
    through closing, in spite of the inspector's report indicating water
    damage to walls and heavy caulking around the skylights. The
    court determined that there could not have been reasonable
    reliance on the disclosure statement, given the inspection report
    and the indication of a problem with leakage. The plaintiffs
    appealed.

    The Court of Appeals *held*:

    1. The plaintiffs could have reasonably relied on the disclosure
statement for the proposition that the sunroom roof did not leak at
the time of sale because both the disclosure statement and the
plaintiffs' inspector discussed leaks occurring in the past, not in
the present. The question of reasonable reliance is an open
question of fact that was sufficiently raised by all the pleadings,
affidavits, and documentary evidence, as viewed in the light most
favorable to the plaintiffs as the nonmoving parties on the motion
for summary disposition. The trial court erred in granting sum-
mary disposition for the defendants.

    2. The Seller Disclosure Act (SDA), MCL 565.951 *et seq.*,
requires the seller of certain real property to make the specific
disclosures in good faith, i.e., in honesty in fact in the conduct of
the transaction. MCL 565.960. Although the SDA provides limita-
tions for the liability of the seller, particularly when the seller did

not know, or with the exercise of ordinary care would not have known, of any flaws in the home, it does not limit any liabilities for disclosure mistakes or errors created by fraud, misrepresentation, or deceit in the transaction. MCL 565.961. The SDA creates a legal duty of disclosure relative to the transaction in this case. The trial court erred in determining that there was no genuine issue of material fact for a jury to decide regarding any knowing misrepresentation, error, inaccuracy, or omission in the defendants' disclosure statement.

Reversed and remanded for further proceedings.

*Cox, Hodgman & Giarmarco, P.C.* (by *Christopher J. Nelson*), for the plaintiffs.

*Plymouth Legal Group, LLC* (by *Stephen H. Boak*), for the defendants.

Before: BORRELLO, P.J., and MURPHY and NEFF, JJ.

PER CURIAM. Plaintiffs appeal as of right the order granting summary disposition in favor of defendants[1] under MCR 2.116(C)(10) and the order denying plaintiffs' motion for reconsideration. This action was filed after plaintiffs purchased a home from defendants in 2001 and then discovered a significant leak in the glass-paned roof of a sunroom, or alternately referred to as the hot tub room, that is attached to the back of the house. We reverse.

Plaintiffs filed a complaint sounding in fraud, negligent misrepresentation, and breach of contract arising out of defendants' alleged failure to disclose the leaking roof. Before the sale was consummated, defendants executed and delivered a seller's disclosure statement that affirmatively indicated problems with a leaking roof, but also noted, in regard to the roofing, that there

---

[1] Kenneth and Karen Baker are the only defendants subject to this appeal. All references to "defendants" in this opinion pertain to the Bakers only.

had been a "complete tear-off & replacement [in] June 1998." Another portion of the disclosure statement reflected that there had been evidence of water in the home's basement or crawl space, with the statement specifically providing that there had been "leaking under front porch"; however, the problem was "completely rectified w/new roof '98." There is no specific mention of leaking skylights or leaks in the sunroom roof. A reasonable interpretation of the disclosure statement is that there had once been a problem with a leaking roof, but it was rectified with a new roof in 1998.

In 1999, however, defendants had hired Gregory Glass & Maintenance, Inc., to perform repairs on leaking skylights in the sunroom. Brant Rousseaux, owner of Gregory Glass, provided a quote for the repairs, which quotation indicated that the "existing caulking has failed and is hard and dry creating many areas where water is penetrating under the flashing and around the glass to the interior of the system." Rousseaux recommended that all the old caulking be removed and replaced, and the repairs were performed in October 1999. Rousseaux testified in his deposition that he informed defendant Karen Baker that certain areas of rotting wood in the sunroom, including around the skylights, needed to be addressed by a carpenter.

Before the closing on the real estate transaction, plaintiffs had a home inspection performed by Jeffrey Halprin, president of JLH Home Services, Inc. Under the heading of "hot tub," the inspection report provided that the "glass enclosure shows heavy applications of silicone along the edge where the glass has leaked in the past." In the summary section of the inspection report, which section addressed "significant concerns and considerations," the report states that the "[h]ot tub room

has experienced past leakage and shows signs of ice damming at the roofs [sic] edge (glass roof is heavily caulked at the gutter)."

Halprin stated in his affidavit that he "saw nothing that would lead me to conclude or speculate as to whether the Property was experiencing an active leak." Halprin further explained that he observed inadequate ventilation in the room, but "because [he could not] speculate, [he] had no reason to believe that certain . . . signs of past water in the hot tub room were not attributable to the ventilation issues rather than the active leak condition that Plaintiffs experienced after the closing." Halprin averred that, on his second visit to the house after the closing, he personally "observed water freely running into the hot tub room," but he was unable to identify the entry points for the water. On the basis of his experience of observing almost five thousand roofs as a home inspector, he opined that the intensity of the leaking condition that he saw on his second visit indicated that the leak was active before the sale. Halprin further averred that the wood rot he identified "along the exterior [of] the hot tub room was at the front, side and bottom of the room and not along the glass enclosure at the top of the room."

The trial court granted defendants' motion for summary disposition pursuant to MCR 2.116(C)(10). The pertinent portion of the trial court's written opinion provides:

> [I]t appears that Plaintiffs have based their fraud claims regarding the sunroom on the allegation that Defendants failed to fully disclose the _extent_ and scope of the leaking roof/skylight. The Seller's Disclosure statement clearly indicates that there were "roof leaks" and that the roof was replaced in 1998. Additionally, Plaintiffs retained their own inspector, and an inspection was conducted before the parties proceeded through closing. Plaintiffs' own inspec-

tor found "heavy caulking" around the skylight and past leakage. The inspector's report also stated that the "[h]ot tub room has experienced past leakage, and shows signs of ice damming at the roofs [sic] edge" and water damage to the walls in the same room. . . .

The Court observes that Plaintiff provided an affidavit indicating that he relied on the Seller's Disclosure Statement. However, a party or a witness may not create a factual dispute by submitting an affidavit that contradicts his own prior conduct. [Citations omitted.]

Other than the Affidavit of James Bergen, Plaintiffs have failed to proffer evidence demonstrating *actual reliance* on the information contained in the Seller's Disclosure Statement.

Despite the information contained in the Seller's Disclosure Statement, and the results of their own inspection, Plaintiffs proceeded through closing on the home under an "As Is" contract.

* * *

To conclude, the Court finds that Plaintiffs [sic] claims of "fraud" based on the Seller's Disclosure Statement and "negligent misrepresentation" fail because the evidence proffered fails to demonstrate the existence of a genuine issue of material fact regarding the actual reliance requirement. [Emphasis in original.]

The trial court found that plaintiffs failed to create a factual issue on the matter of actual reliance. The court's ruling is necessarily predicated on its conclusory belief that the disclosure statement and the inspection report provided sufficient notice to plaintiffs that there was a problem with leakage and that such knowledge could not be overcome with an affidavit to the contrary. In other words, according to the trial court, there could not have been actual reliance on the disclosure statement to the effect that there was no leakage problem in the face of the inspection report and the disclosure

statement itself that indicated or suggested a problem with leakage. We find that the trial court overstepped its bounds for purposes of a motion for summary disposition brought pursuant to MCR 2.116(C)(10).

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). Further, this Court reviews a trial court's decision to grant or deny a motion for reconsideration for an abuse of discretion. *Churchman v Rickerson*, 240 Mich App 223, 233; 611 NW2d 333 (2000).

MCR 2.116(C)(10) provides for summary disposition where there is no genuine issue about any material fact and the moving party is entitled to judgment or partial judgment as a matter of law. A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the affidavits or other documentary evidence show that there is no genuine issue in respect to any material fact and that the moving party is entitled to judgment as a matter of law. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). In addition, all affidavits, pleadings, depositions, admissions, and other documentary evidence filed in the action or submitted by the parties are viewed in a light most favorable to the party opposing the motion. "Where the burden of proof . . . on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in the pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists." *Id.* Where "the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted." *Id.* at 363. "A genuine issue of material fact exists when the record, giving the benefit of reasonable

doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003) (citations omitted).

A claim for fraudulent misrepresentation or actionable fraud generally requires a showing that

"(1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage." [*M & D, Inc v McConkey*, 231 Mich App 22, 27; 585 NW2d 33 (1998) (*M & D II*), quoting *M & D, Inc v McConkey*, 226 Mich App 801, 806; 573 NW2d 281 (1997) (*M & D I*); see also M Civ JI 128.01.]

Furthermore, under the silent fraud doctrine, a cause of action "is established when there is a suppression of material facts and there is a legal or equitable duty of disclosure." *M & D II, supra* at 35-36. Further, "there must be some type of misrepresentation, whether by words or action, in order to establish a claim of silent fraud." *Id.* at 36.

Plaintiffs' claims arise out of statements or omissions in the seller's disclosure statement, which necessarily requires us to focus on the Seller Disclosure Act (SDA), MCL 565.951 *et seq.* The seller disclosure requirements of the act "apply to the transfer of any interest in real estate consisting of not less than 1 or more than 4 residential dwelling units, whether by sale, exchange, installment land contract, lease with an option to purchase, any other option to purchase, or ground lease coupled with proposed improvements by the purchaser or tenant, or a transfer of stock or an interest in a residential cooperative." MCL 565.952. Here, a transfer

of a single-family dwelling by sale was involved, and thus the act's disclosure requirements became applicable.[2]

MCL 565.954(1) provides that "[t]he transferor of any real property described in [MCL 565.952] shall deliver to the transferor's agent or to the prospective transferee or the transferee's agent the written statement required by this act." The remaining language found in MCL 565.954(1)(a) through (4) addresses the timeline for delivery of the seller's disclosure statement, evidence of compliance, and the right to terminate the purchase agreement. There is no dispute that a disclosure statement was timely delivered to plaintiffs.

MCL 565.957 provides the actual disclosure form that is mandated by the act. The statutory form requires and provides, in part, that the seller answer all questions and report known conditions affecting the property. The form reads, "This statement is a disclosure of the condition and information concerning the property, known by the seller." MCL 565.957(1). The statutory form also provides that the disclosure "is not a warranty of any kind by the seller or by any agent representing the seller in [the] transaction, and is not a substitute for any inspections or warranties the buyer may wish to obtain." *Id.* The disclosure statement or form particularly requires a seller to disclose whether the roof leaks. *Id.*

Of particular importance is the act's provision touching on liability arising from errors, inaccuracies, or

---

[2] A number of property interest transfers are exempt from the seller disclosure requirements, e.g., transfers to a mortgagee, transfers by a nonoccupant fiduciary, and transfers made to a spouse, parent, grandparent, child, or grandchild. MCL 565.953. None of these exceptions is applicable to the transfer involved in the case at bar.

omissions in the disclosure statement. MCL 565.955(1) provides:

> The transferor or his or her agent is not liable for any error, inaccuracy, or omission in any information delivered pursuant to this act if the error, inaccuracy, or omission was not within the personal knowledge of the transferor, or was based entirely on information provided by public agencies or provided by other persons specified in subsection (3) [not applicable here], and ordinary care was exercised in transmitting the information. It is not a violation of this act if the transferor fails to disclose information that could be obtained only through inspection or observation of inaccessible portions of real estate or could be discovered only by a person with expertise in a science or trade beyond the knowledge of the transferor.[3]

The disclosures required by the act are to be made in "good faith," and "good faith" means "honesty in fact in the conduct of the transaction." MCL 565.960. "The specification of items for disclosure in this act does not limit or abridge any obligation for disclosure created by any other provision of law regarding fraud, misrepresentation, or deceit in transfer transactions." MCL 565.961.

In interpreting the SDA, we first turn to the rules of statutory construction. In *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002), the Michigan Supreme Court, reiterating the guiding principles of statutory construction, stated:

> An anchoring rule of jurisprudence, and the foremost rule of statutory construction, is that courts are to effect the intent of the Legislature. To do so, we begin with an examination of the language of the statute. If the statute's language is clear and unambiguous, then we assume that the Legislature intended its plain meaning and the statute

---

[3] Although not pertinent to the action before us, we note that MCL 565.956 states, in part, that, "If information disclosed in accordance with this act becomes inaccurate as a result of any action, occurrence, or agreement after the delivery of the required disclosures, the resulting inaccuracy does not constitute a violation of this act."

is enforced as written. A necessary corollary of these principles is that a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself. [Citations omitted.]

Reviewing collectively the language of the relevant statutes that comprise the SDA, it is evident that the Legislature intended to allow for seller liability in a civil action alleging fraud or violation of the act brought by a purchaser on the basis of misrepresentations or omissions in a disclosure statement, but with some limitations. Liability is precluded for errors, inaccuracies, or omissions in a seller disclosure statement that existed when the statement was delivered where the seller lacked personal knowledge, and would not have had personal knowledge by the exercise of ordinary care,[4] of any error, inaccuracy, or omission and thus proceeds in good faith to deliver the disclosure statement to the buyer. MCL 565.955; MCL 565.956; MCL 565.960. The SDA clearly creates a legal duty of disclosure relative to the transaction in this case.

Focusing our attention on plaintiffs' claim of fraud, we conclude that there is a genuine issue of material fact with respect to whether the seller's disclosure statement indeed contained a misrepresentation, error, inaccuracy, or omission, and whether defendants had personal knowledge of any misrepresentation, error, inaccuracy, or omission, or should have had such knowledge by the exercise of ordinary care, and proceeded in good faith to deliver the statement.

---

[4] We emphasize that, consistent with MCL 565.955(1), the seller has not violated the act where undisclosed and unknown information could be obtained only through inspection or observation of inaccessible areas of the home or could only be discovered by a person with expertise beyond the knowledge of the seller.

The disclosure statement indicated that the roof leaks. Although not specific regarding what areas of the roof leaked, this statement, *in and of itself*, cannot be deemed, in relation to plaintiffs' grievances, a misrepresentation, error, or inaccuracy, nor can it give rise to a claim of an omission. The simple question whether the roof leaks and the response, as the question and response are framed and drawn in the disclosure statement, relate to the present tense, not the past tense; the question posed was not whether the roof *leaked*, nor was the direct response that it had leaked in the past.

The problem that arises comes from the accompanying explanatory language: "complete tear-off & replacement June 1998." Also, the disclosure statement provides, in relation to basement or crawl space evidence of water, that "leaking under front porch completely rectified w/new roof '98." When this language is taken into consideration with the indication of a leaking roof, reasonable minds could conclude that the information actually suggested a past problem, and not a current problem, with a leaking roof and that the problem had been corrected by the installation of a new roof. Assuming for this portion of our discussion that the sunroom roof was leaking when the disclosure statement was delivered, such an interpretation of the disclosure statement could lead one to conclude that the statement was in error, inaccurate, and reflected a misrepresentation or omission. There is no specific reference in the disclosure statement to leaking skylights or a leaking sunroom roof, which compounds the possible confusion. Importantly, we note that defendants never maintained that they had disclosed that the sunroom roof leaked, but instead argued that there was no misrepresentation or omission in the disclosure statement as there was no leakage following the 1999 repairs by Rousseaux. In

James Bergen's affidavit, he averred that when he contacted Karen Baker after experiencing the leak, she stated that there was no reason to disclose a leak " 'because it was fixed.' " We additionally note that defendants did not make mention in the disclosure statement of Rousseaux's repairs to the leaking skylights in 1999. It is for the trier of fact to resolve the issue of how to interpret the disclosure statement.

Next, with respect to whether the sunroom roof or skylights were in fact leaking when the disclosure statement was delivered and whether defendants acted in bad faith and had personal knowledge of the leaks, or whether they should have had personal knowledge through the exercise of ordinary care, there was sufficient circumstantial evidence presented to at least create an issue of fact on these matters. Circumstantial evidence can be evaluated and utilized in regard to determining whether a genuine issue of material fact exists for purposes of summary disposition. See *Rymal v Baergen*, 262 Mich App 274, 311; 686 NW2d 241 (2004). Moreover, questions concerning the state of one's mind, including intent, motivation, or knowledge, can be proven by circumstantial evidence. See *id.*; *Sturgis S & L Ass'n v Italian Village, Inc*, 81 Mich App 577, 582; 265 NW2d 755 (1978).

Although home inspector Halprin stated in his affidavit that he "saw nothing that would lead me to conclude or speculate as to whether the Property was experiencing an active leak," he also averred that, on his second visit to the house after the closing, he personally "observed water freely running into the hot tub room." As noted above, Halprin, on the basis of his experience of observing almost five thousand roofs as a home inspector, opined that the leaking condition, as observed on his second visit, was active before the sale.

Moreover, plaintiffs submitted the quotes that they solicited from contractors to repair the leak. The quotes indicated that the leaking was an extensive, long-term condition that required a complete overhaul of the room or the leaking would continue to occur. The 1999 contractor, Rousseaux, also testified that, although the caulking that he had performed in 1999 was still intact and stable when he returned to the house after commencement of the present litigation, there was more rotting wood occurring. Additionally, the video of the leakage submitted by plaintiffs alone creates a question of fact regarding whether the leak was active when defendants signed the seller's disclosure statement. In light of the considerable extent of the leak, a reasonable fact-finder could also infer that defendants knew about the leak yet proceeded in bad faith by impermissibly failing to disclose the condition. Once again, we have issues that must be resolved by the trier of fact.

Finally, plaintiffs also created a question of fact regarding their reliance. The trial court disregarded James Bergen's affidavit, but this was error on the court's part because interrogatories and affidavits are relevant and must be considered when the ground stated for summary disposition is that there is no genuine issue of material fact. MCR 2.116(G)(5); *Madison Nat'l Bank v Lipin*, 57 Mich App 706, 709; 226 NW2d 834 (1975). Under MCR 2.116(C)(10), the court must consider *all* the pleadings, affidavits, and documentary evidence in a light most favorable to the nonmoving party. *Quinto, supra* at 362. In addition to the affidavit, plaintiffs stated, in response to interrogatories, that they relied on statements in the seller's disclosure statement, which did not indicate any problems with leaks in the sunroom.

We agree with the trial court that a party's "reliance" on a misrepresentation in fraud actions must be reasonable. *Novak v Nationwide Mut Ins Co,* 235 Mich App 675, 690-691; 599 NW2d 546 (1999) (a person who unreasonably relies on false statements is not entitled to damages for misrepresentation). We further agree that summary disposition cannot be avoided by a party's conclusory assertions in an affidavit that conflict with the actual historical conduct of the party. *Aetna Cas & Surety Co v Ralph Wilson Plastics Co,* 202 Mich App 540, 548; 509 NW2d 520 (1993). We disagree, however, with the trial court that plaintiffs failed to create a factual issue regarding actual reliance. Plaintiffs, as claimed in the affidavit and interrogatory answers, could have actually relied on the disclosure statement for the proposition that the sunroom roof did not leak, and could have done so reasonably, even in the face of the inspection report and language in the disclosure statement itself. As we stated earlier, the disclosure statement can be read as suggesting that there were no existing or active problems with roof leakage, and the inspection report did not indicate that the sunroom roof was currently leaking or had lost its seal, but rather spoke of past leakage. The inspector's observation of wood rot and heavy caulking, couched in terms of past leakage, could reasonably have led plaintiffs to believe that there was no active problem with leaking and that past repairs had been successful. The trial court erred in granting summary disposition for defendants because, viewing all of the documentary evidence in a light most favorable to plaintiffs, they submitted sufficient documentary evidence to create a question of fact regarding whether they actually and reasonably relied on the seller's disclosure statement, when both the disclosure statement and the inspection

report failed to identify any active leakage problem affecting the property.[5]

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

---

[5] Plaintiffs also argue that the trial court erred in concluding that an "as is" clause in the purchase agreement trumped plaintiffs' misrepresentation claims. Plaintiffs' contentions on this issue are without merit because the court did not rely on the presence of the "as is" clause in dismissing plaintiffs' cause of action. The court merely mentioned the existence of the clause as part of its rendition of the factual background and acknowledged the same case law presented by plaintiffs on appeal, i.e., "as is" clauses do not insulate a seller from liability where the seller makes fraudulent representations. See *Lorenzo v Noel*, 206 Mich App 682, 687; 522 NW2d 724 (1994). We further note that plaintiffs have declined to address on appeal that portion of the trial court's ruling regarding claims of bat and raccoon infestation; therefore, any claims related to that matter do not survive.