*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MIKE JADAN,

Plaintiff-Appellant,

UNPUBLISHED
August 19, 2021

v

No. 353177
Oakland Circuit Court
LC No. 2019-172643-CZ

GLENN F. NEVILLE and KELLY R. NEVILLE,

Defendants-Appellees.

Before: LETICA, P.J., and SERVITTO and M. J. KELLY, JJ.

PER CURIAM.

Plaintiff, Mike Jadan, appeals as of right the trial court order granting defendants Glenn and Kelly Neville's motion for summary disposition under MCR 2.116(C)(10). Because there are no errors warranting reversal, we affirm.

## I. BASIC FACTS

On May 4, 2018, Jadan purchased a residential property from the Nevilles. Before the purchase, the Nevilles provided a seller's disclosure statement in which they made a number of representations regarding the condition of the property. Relevant to the issues raised in this appeal, they represented that (1) the central air conditioning and heating system were in working order, (2) there was no evidence of water in the basement/crawlspace, (3) there were no leaks in the roof, (4) structural modifications, alterations, or repairs had not been made without the necessary permits or licensed contractors, and (5) there were no known structural problems.

After receiving the seller's disclosure statement but before purchasing the property, Jadan had the home and the crawlspace professionally inspected. Notably, the crawlspace inspection report expressly stated that the condition of the crawlspace was "poor." Major concerns included mold contamination, a sewer leak, and "moist and fallen" insulation. The property inspection report also identified problems with the property. With regard to the roof, the overall condition was listed as "poor," and the skylight flashings were noted to be "fair," but covered in mastic. The report stated that a window in the kitchen had a broken or cracked glass pane, but otherwise the windows were functional. The report noted that the walls, ceiling, and floors in the "interior areas" were in good condition. Further, it was noted that some windows showed signed of "loss of

-1-

seal/condensation," so repair or replacement was recommended. The floor in the laundry room was listed as in fair condition; however, there were loose or missing tiles and water damage was observed. The heater's condition was listed as good, but the air conditioner was not level.

In addition to the professional inspections, Jadan and his real estate agent also examined the property several times. In an affidavit, his real estate agent averred that "[t]he house was in good condition for its age." She also noted:

> 5. The condition of the interior floors, walls, ceilings, and windows were not concealed and could be observed by casual observation when we inspected the property. The exterior of the home and the structure of the swimming pool were also easily observable, although the pool was not in operation at the time because it was late winter and early spring when we inspected the property. The pool was operational at the time Mr. Jadan took possession of the property.

> 6. I did not observe any significant sagging in the floors when we inspected the property. If the floors were in such condition, I would have told Mr. Jadan about it because that is something I routinely look for and advise my clients.

> 7. Mr. Jadan retained two inspectors to professionally inspect the property. After receiving the inspection reports, he sent me the documents attached hereto to negotiate concessions with the Nevilles. After these negotiations, a new purchase agreement was signed by the parties and the parties closed the transaction.

Several e-mails from or to Jadan indicate the negotiations related to areas of the property that he wanted to be fixed prior to his purchase. As a result of the post-inspection negotiations, the parties agreed to two addendums to the purchase agreement: one related to the pool and one related to general conditions, including a number of areas that were to be fixed prior to closing.

After his purchase of the property, Jadan experienced several issues with the home, which he attempted to have the Nevilles repair. Ultimately, the parties were unable to resolve the ongoing disputes regarding the property's condition, and on March 20, 2019, Jadan, acting in pro per, filed a complaint against the Nevilles. Jadan contended that the Nevilles had falsified information in their seller's disclosure statement, that they had not made repairs that they agreed to make, that they had removed shelves and window treatments from the home (damaging the walls in the process), and that there were structural problems with the pool.

On November 11, 2019, the Nevilles moved for summary disposition under MCR 2.116(C)(10). They asserted that they did not make any knowingly false statements in their seller's disclosure statement, and that, in any event, Jadan could not show that he relied on any statement in that disclosure because he inspected the property personally, had two professional inspections, and negotiated at length regarding conditions he wanted to be fixed prior to closing. Following oral argument, the trial court granted the Nevilles summary disposition.

## II. FRAUD

### A. STANDARD OF REVIEW

Jadan argues that the trial court erred by granting the Nevilles' motion for summary disposition. This Court reviews de novo a trial court's decision whether to grant a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim and may be granted when there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). In reviewing such a motion, a court considers the pleadings, affidavits, depositions, admissions, and documentary evidence in a light most favorable to the nonmoving party. *Id*. "A genuine issue of material fact exists when the record leaves open an issue on which reasonable minds could differ." *Bennett v Detroit Police Chief*, 274 Mich App 307, 317; 732 NW2d 164 (2006).

In his brief on appeal, Jadan argues that the trial court erred by not liberally viewing the allegations in his complaint, which was filed pro per. However, the trial court did not grant summary disposition under MCR 2.116(C)(8) (failure to state a claim). Instead, it granted the motion under MCR 2.116(C)(10). "In establishing the existence of a genuine issue of disputed fact, [Jadan cannot] rely on mere allegations or denials in [his] pleading, but had to, by affidavits or as otherwise provided [by MCR 2.116], set forth specific facts showing that there is a genuine issue for trial." See *Barnard Mfg*, 285 Mich App at 374 (quotation marks and citations omitted).

### B. ANALYSIS

"Michigan's contract law recognizes several interrelated but distinct common-law doctrines—loosely aggregated under the rubric of 'fraud'—that may entitle a party to a legal or equitable remedy if a contract is obtained as a result of fraud or misrepresentation." *Titan Ins Co v Hyten*, 491 Mich 547, 555; 817 NW2d 562 (2012). As described by this Court in *Alfieri v Bertorelli*, 295 Mich App 189, 193-194; 813 NW2d 772 (2012):

> Common-law fraud or fraudulent misrepresentation entails a defendant making a false representation of material fact with the intention that the plaintiff would rely on it, the defendant either knowing at the time that the representation was false or making it with reckless disregard for its accuracy, and the plaintiff actually relying on the representation and suffering damage as a result. Silent fraud is essentially the same except that it is based on a defendant suppressing a material fact that he or she was legally obligated to disclose, rather than making an affirmative misrepresentation. Such a duty may arise by law or by equity; an example of the latter is a buyer making a direct inquiry or expressing a particularized concern. A misleadingly incomplete response to an inquiry can constitute silent fraud. [Citations omitted.]

The Seller Disclosure Act (SDA), MCL 565.951 *et seq*., imposes a legal duty on sellers to disclose to buyers the existence of certain known conditions affecting the house. MCL 565.957(1). The SDA requires a transferor to honestly disclose and to disclose in good faith information known

to the transferor at the time the seller's disclosure statement is completed. See *Roberts v Saffell*, 280 Mich App 397, 413; 760 NW2d 715 (2008). "[A] transferor may not be held liable for any errors, inaccuracies, or omissions in the [seller's disclosure statement] unless they were within the transferor's personal knowledge." *Id*. As explained by this Court in *Bergen v Baker*, 264 Mich App 376, 385; 691 NW2d 770 (2004), "it is evident that the Legislature intended to allow for seller liability in a civil action alleging fraud or violation of the act brought by a purchaser on the basis of misrepresentations or omissions in a disclosure statement, but with some limitations." Specifically, "liability is precluded for errors, inaccuracies, or omissions in a seller disclosure statement that existed when the statement was delivered, where the seller lacked personal knowledge, and would not have had personal knowledge by the exercise of ordinary care, of any error, inaccuracy, or omission and thus proceeds in good faith to deliver the disclosure statement to the buyer." *Id.*

In their seller's disclosure statement, the Nevilles represented that there were no "[s]tructural modifications, alterations or repairs made without necessary permits or licensed contractors." Although Jadan alleges a number of repairs were done without necessary permits or licensed contractors, he did not provide any evidence to support that contention. Mere allegations are insufficient to establish a genuine issue of material fact. *Barnard Mfg*, 285 Mich App at 374. Here, rather than support his allegations, Jadan attached excerpts of the Nevilles' answers to the interrogatories. As it relates to structural repairs, modifications, or alterations, the Nevilles stated that the bathroom was remodeled in 2017 by Mr. Bid Services, LLC, an entity that they believed had obtained the necessary permits to complete the remodel. Stated differently, the uncontradicted evidence indicates that, to the Nevilles' personal knowledge, the remodel was not done without proper permits or by an unlicensed contractor. Thus, in this case, liability is precluded because it is for an alleged error or inaccuracy that the sellers, i.e., the Nevilles, lacked personal knowledge of and would not have had personal knowledge by the exercise of ordinary care. See *Bergen*, 264 Mich App at 385.

Jadan also contends that other work was done without necessary and required permits. First, he notes that the skylight was repaired by the Nevilles, not by a licensed contractor. However, the documentation he attached to his response to summary disposition indicates that, in the absence of structural changes, repairs to windows and or re-roofing existing structures do not require a permit. Jadan has not presented any evidence suggesting that applying mastic to a skylight amounts to a structural change to a roof or window. Thus, there is nothing to show that the Nevilles made a misrepresentation in the seller's disclosure statement as to the skylight repairs. And, even if they had, the property inspection report specifically mentioned that the skylight was covered in mastic. Further, the roof was repaired or replaced after the Nevilles made their disclosure statement. As a result, Jadan cannot show that he relied on the seller's disclosure statement with regard to any problems associated with the roof—including leaks—which would include the skylight. See *id*. (noting that the errors, inaccuracies, or omissions in a seller's disclosure statement must be ones that exist at the time the statement is delivered).

Jadan next asserts that there were multiple issues with the heater and the air conditioning and that the Nevilles performed work on both units that was not inspected or that was done without the proper permits. In their answers to the interrogatories, however, the Nevilles explained that the furnace was installed in 2007 or 2008 by West Michigan Heating and Cooling and that the air conditioning had not been replaced while they owned the home. Further, e-mails between the

parties indicate that the Nevilles took apart the air conditioning unit to repair the flooring beneath it. The floor repairs were negotiated because of problems identified in the property inspection report. Therefore, given the e-mails regarding the air conditioning unit, Jadan was fully aware that the Nevilles had done unlicensed work on it. Considering that the air conditioning unit was taken apart by the Nevilles *after* they made the seller's disclosure statement, it cannot be used to show that they knowingly made a false statement on their seller's disclosure statement. See *id*.

Jadan also claims that the Nevilles failed to disclose that the air conditioning unit had a bad coil, that it leaked throughout the crawlspace, and that it was installed in a manner contrary to existing regulations. Yet he has presented no evidence that the Nevilles were aware that the air conditioning unit had a bad coil. Moreover, in the seller's disclosure statement the Nevilles only represented that the air conditioning unit was in working order. After they made that representation, Jadan obtained the crawlspace inspection report, which indicated that there was a leak in the crawlspace. The parties then negotiated for the leak in the crawlspace to be fixed before closing. The Nevilles submitted an affidavit averring that the leak was repaired by a licensed contractor. Moreover, given that the undisputed evidence is that the air conditioning unit was not replaced while the Nevilles were in the house, Jadan cannot show that they had any knowledge that it was installed in a manner contrary to existing regulations.

Additionally, Jadan asserts that the Nevilles failed to properly repair the utility room floor. However, as reflected by e-mails between the parties, Jadan was aware that they were making those repairs. Further, prior to closing, he inspected the property for a final time, so it cannot be said that he relied upon their representation that they had fixed the floor. Thus, he cannot show an action for fraud based on the repairs to the utility room floor.

Jadan also complained that there was a broken window slide. However, he does not identify any representation by the Nevilles that every window was 100% functional. Furthermore, the property inspection report only identified one window as broken. With regard to the remaining windows, the report noted that some of the windows showed signs of loss of seal/condensation and might require repair or replacement. Jadan, therefore, did not rely on any representations the Nevilles made regarding the condition of the windows in the home. Instead, he relied on the property inspection report, which only identified one broken window, which was then repaired before closing.

Jadan has not provided any evidence showing that the Nevilles made a material misrepresentation regarding the above-ground swimming pool. The seller's disclosure statement does not include any representations related to the pool. Further, the record reflects that the pool was the subject of a separate addendum. Per that addendum, the Nevilles warranted that "the structure of the pool, all pool equipment, [and the] filter and heater are currently operable and will be in operable condition on the date of opening." It stated that if the pool was "fully operational when opened or if [Jadan] did not open the pool within one year after closing or possession (whichever occurs later) then [Jadan] shall be deemed to have accepted the pool "as-is." In an affidavit, Jadan's real estate agent averred that that the pool was operational when Jadan took possession of the property. Jadan has not presented any evidence to the contrary.

Finally, Jadan contends that the Nevilles made misrepresentations regarding structural problems with the home. The Nevilles represented in their seller's disclosure statement that there were no known structural defects. However, on June 18, 2019, Jadan had the home inspected "to determine whether the previous owner would have likely known of the structural issues with the first floor framing system and the subsequent cosmetic issues prior to the sale of the home." The report identified structural problems related to the "first floor framing." The Nevilles have presented evidence that they were unaware of those defects, but the structural engineer who authored the June 18, 2019 report opined that the Nevilles would have known of the defects. The engineer explained:

> [I]t is my professional opinion that several of the cosmetic repairs throughout the home and a couple of the structural issues related to the modifications to the floor deck framing for plumbing modifications *should have been obvious to the previous homeowners* and disclosure to you prior to your purchase of the home in the areas related to structural modifications, settling and grading problems. The extensive repairs to the crown moldings and the ceiling/wall cracks would have indicated a structural problem with the first floor deck framing, which was also readily evident due to the significant elevation variations of the floor surfaces throughout the home. . . . The significant sloping levels of the water in the above ground pool in the backyard due to the uneven support for the pool framing w*ould have been known to the former homeowners at the time the residence was sold*. [Emphasis added.]

The engineer also explained that the "crown molding gaps were previously caulked with significant amounts of caulking materials in several areas in an attempt to conceal the floor deflection related cracks, but the continual movement of the deflecting floor deck under live loads in combination with the normal temperature and shrinkage changes throughout the heating and cooling seasons, has revealed significant gaps in the previously repaired areas since you purchased the home." The engineer's report, therefore, is circumstantial evidence that the Nevilles were aware of the structural problems, that they concealed them by initiating significant, but ultimately temporary repairs, and that the defects became apparent only after Jadan moved into the home. Moreover, notwithstanding that the seller's disclosure statement was not a warranty regarding the property's condition, the Nevilles' failure to disclose knowledge that they had about structural problems is circumstantial evidence that they intended Jadan would rely on the seller's disclosure statement and make an offer to purchase the property.[1]

---

[1] The Nevilles argue that they are only liable for errors, inaccuracies, or omissions in the seller's disclosure report that they had personal knowledge of or would have any personal knowledge of by the exercise of *ordinary* care. See *Bergen*, 264 Mich App at 385. However, the engineer did not opine that if the Nevilles had his expertise, they would have known of the structural defects. Instead, he opined that their awareness should have developed because of the substantial repairs he detailed in his report.

The fact that Jadan eventually agreed to purchase the property "as is" is also not dispositive. As explained by this Court:

"As is" clauses allocate the risk of loss arising from conditions unknown to the parties. . . . "As is" clauses also transfer the risk of loss where the defect should have reasonably been discovered upon inspection, but was not. They do not, however, transfer the risk of loss where a seller makes fraudulent representations before a purchaser signs a binding agreement. [*Lorenzo v Noel*, 206 Mich App 682, 687; 522 NW2d 724 (1994) (quotation marks and citations omitted).]

Here, the Nevilles claim that they had no knowledge of the structural defects when they signed the seller's disclosure statement, but the engineering report indicates that, considering the scope of the structural issues and the evidence that repairs had been done on multiple occasions to correct the issues, the Nevilles would have been aware of the issue. Therefore, the "as is" clause in the purchase agreement would only become dispositive if Jadan's fraud claim failed on some other ground.

Jadan's fraud claim fails because he cannot show that he relied upon the representations in the seller's disclosure statement. The SDA creates a duty to disclose certain information, but it is not an independent cause of action. Instead, as explained above, a claim for fraud requires that the plaintiff *acted in reliance* upon the misrepresentation. See *Alfieri*, 295 Mich App at, 193. Here, the record reflects that Jadan did not rely on the representations in the seller's disclosure statement. Instead, he personally inspected the property on multiple occasions and he had retained two professional inspections of the property. As a result of those inspections, he engaged in additional negotiations to fix issues identified. Thus, even viewing the facts in the light most favorable to Jadan, he cannot show that he relied upon the representations in the seller's disclosure statement.

In sum, because Jadan did not present evidence to establish that there was a genuine issue of material fact with regard to his various claims of fraud, the trial court did not err by granting summary disposition.

Affirmed. The Nevilles may tax costs as the prevailing parties. MCR 7.219(A).

/s/ Anica Letica
/s/ Deborah A. Servitto
/s/ Michael J. Kelly