*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARK KREMER,

      Plaintiff-Appellee,

UNPUBLISHED
October 20, 2022

v

No. 358978
Wayne Circuit Court
LC No. 19-013155-NM

BRIAN DAILEY and DAILEY LAW FIRM, PC,

      Defendants-Appellants.

Before: LETICA, P.J., and SERVITTO and HOOD, JJ.

PER CURIAM.

Defendants Brian Dailey (Dailey) and Dailey Law Firm, PC (Dailey Law Firm), appeal by leave granted[1] the trial court's order denying their motion for summary disposition. We reverse the trial court's order and remand for entry of an order granting defendants' motion.

## I. BACKGROUND

This appeal arises out of an attorney malpractice suit, related to defendants' representation of Kremer in a no-fault action. Dailey represented plaintiff Mark Kremer in connection with claims arising from a 2013 automobile accident. The parties submitted the first-party claims to arbitration, resulting in an award of $52,500, inclusive of all past, present, and future first-party benefits. Dailey later learned of unpaid medical bills from a doctor to which Dailey had referred Kremer, as well as the facility out of which that doctor operated. This led to Dailey and Kremer disagreeing about the appropriate distribution of the arbitration proceeds.

As a result of the disagreement, Kremer sent defendants a letter dated April 22, 2017, demanding payment from the arbitration award. In the letter, Kremer demanded a check for $27,745, representing the arbitration award minus $17,500 in legal fees and $7,255 in medical

---

[1] *Kremer v Dailey*, unpublished order of the Court of Appeals, entered January 12, 2022 (Docket No. 358978).

bills. He also referenced an anticipated Attorney Grievance Commission (AGC) investigation for conflicts of interest related to defendants' representation.

After sending the letter, Kremer met with Dailey on May 3, 2017, to discuss amounts owed to the medical providers. At the meeting, Dailey informed Kremer of additional amounts owed to another provider. Dailey provided Kremer with a new fee agreement for representation to reduce or eliminate liens against the arbitration award. Kremer signed the agreement. But he became uncomfortable with the agreement, so he took the signed agreement with him and left Dailey's office.

On November 28, 2017, Dailey Law Firm filed an interpleader complaint to resolve the competing claims to the arbitration award. According to the interpleader complaint, after distribution of expenses and attorney fees, Dailey Law Firm had $33,569.99 in its client trust account, but the unpaid medical liens totaled in excess of $84,000. Defendants did not serve Kremer with the interpleader complaint until February 5, 2018.

On October 2, 2019, Kremer sued defendants for malpractice, alleging that Dailey breached his duty of care "by failing to pursue all outstanding medical and rehabilitative costs due providers." After discovery, defendants moved for summary disposition on two grounds: (1) that the two-year statute of limitations barred Kremer's complaint, and (2) that Kremer did not have an expert witness to establish that defendants breached the standard of care. Kremer responded that his claim was timely because it did not accrue until February 5, 2018, when defendants served him with the interpleader complaint, thereby ending his attorney-client relationship with defendants. Concerning defendants' second argument, Kremer stated only that "[n]o expert is needed when the claim is that Defendant intentionally lied and misrepresented to the Plaintiff that there were outstanding medical liens that exceeded the net settlement amount." The trial court dispensed with oral argument and denied defendants' motion without explanation. This appeal followed.

## II. STANDARD OF REVIEW

We review a trial court's summary disposition ruling de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). MCR 2.116(C)(7) governs summary disposition on the basis of a statute of limitations. *Sabbagh v Hamilton Psychological Servs, PLC*, 329 Mich App 324, 335; 941 NW2d 685 (2019). The reviewing court must consider all documentary evidence submitted by the parties and accept well-pleaded allegations as true, viewing both the pleadings and supporting evidence in the light most favorable to the nonmoving party. *Id.* at 335-336; *Kincaid v Cardwell*, 300 Mich App 513, 522; 834 NW2d 122 (2013). "If there is no factual dispute, whether a plaintiff's claim is barred under the applicable statute of limitations is a matter of law for the court to determine." *Kincaid*, 300 Mich App at 523. "[I]f a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate." *Dep't of Environmental Quality v Gomez*, 318 Mich App 1, 21; 896 NW2d 39 (2016) (quotation marks and citation omitted). An issue of fact exists if "the record leaves open an issue upon which reasonable minds might differ." *El-Khalil*, 504 Mich at 160 (quotation marks and citation omitted).

## III. LAW AND ANALYSIS

Defendants argue that summary disposition should have been granted because Kremer's complaint was filed after the two-year limitations period expired. We agree.

"A plaintiff must bring a malpractice action within two years of accrual of the claim, MCL 600.5805(1) and (6),[2] or within six months of when he or she discovered or should have discovered the claim, MCL 600.5838(2), whichever is later." *Nortley v Hurst*, 321 Mich App 566, 570; 908 NW2d 919 (2017). "A professional malpractice claim accrues when the professional stops serving the plaintiff in a professional capacity on the matter giving rise to the claim." *Id*. "[A]n attorney's representation of a client generally continues until the attorney is relieved of that obligation by the client or the court." *Kloian v Schwartz*, 272 Mich App 232, 237; 725 NW2d 671 (2006). A client may, through his or her actions, end the professional relationship without formally discharging the attorney. See *Wright v Rinaldo*, 279 Mich App 526, 535-537; 761 NW2d 114 (2008) (holding client implicitly terminated his former patent lawyer's services by revoking the former lawyer's power of attorney and granting power of attorney to a new lawyer).

These rules, however, only apply to the extent that they actually serve to measure the accrual of a malpractice claim within the meaning of MCL 600.5838(1). See *Kloian*, 272 Mich App at 237-238. Some situations do not permit their application; in which case, we apply the more general rule that a legal malpractice claim accrues on the attorney's "last day of professional service" in the matter out of which the claim for malpractice arose. *Id*., citing *Gebhardt v O'Rourke*, 444 Mich 535, 543; 510 NW2d 900 (1994). When an attorney is not dismissed by the court or the client, and the client has not retained substitute counsel, the attorney's service ends "upon completion of a specific legal service that the lawyer was retained to perform." *Maddox v Burlingame*, 205 Mich App 446, 450; 517 NW2d 816 (1994).

Kremer retained defendants to represent him in connection with claims arising from a motor vehicle accident. Dailey filed suit on Kremer's behalf and, in November 2016, obtained an arbitration award in Kremer's favor. This concluded the specific legal matter for which Kremer retained defendants. At that point, the only remaining task was disbursement of the arbitration proceeds. When unforeseen medical liens came to light in early 2017, Dailey and Kremer disagreed about the appropriate disbursement. This new controversy was outside of the original scope of representation. It amounted to a new matter, which is why defendants met with Kremer to discuss the terms of their continued representation at the May 3, 2017 meeting. On April 22, 2017, Kremer sent defendants a letter demanding payment of the proceeds, less attorney fees and a specified amount for a disputed medical bill. Kremer also warned defendants that the AGC would investigate the viability of the disputed medical provider claim, as well as whether there was a "conflict of interest or misrepresentation of my case."

Dailey met with Kremer shortly after Kremer sent the April 22, 2017 letter. Dailey asked Kremer to sign a new fee agreement, for this new matter: representing him to reduce or eliminate

---

[2] The Legislature amended the statute effective June 12, 2018, by enacting 2018 PA 183, and the applicable limitations period is now found in MCL 600.5805(8). The applicable limitations period in *Nortley*, decided before the enactment of 2018 PA 183, was set forth in MCL 600.5805(6). See 2012 PA 582.

the medical liens on the arbitration award. Kremer admitted that he signed the agreement. But he became uncomfortable and ultimately took the signed agreement with him when he left Dailey's office. On May 9, 2017, Kremer filed a complaint with the AGC and requested an investigation. Kremer then sent Dailey a second letter dated May 26, 2017. The May 26, 2017 letter stated that Kremer would not sign the new fee agreement and expressed his belief that Dailey's relationship with one of the medical providers presented a conflict of interest. The letter concluded by indicating that Kremer "decided to let the grievance commission do their investigation[.]"

Viewing these facts in the light most favorable to Kremer, reasonable minds would agree that Kremer discharged defendants no later than May 26, 2017—the day he filed a request for investigation with the AGC.[3] Kremer explicitly refused to sign the fee agreement regarding continued services,[4] opined that Dailey had a conflict of interest, and reiterated that the AGC would be investigating his complaints. By that point, Kremer's position regarding their professional relationship was abundantly clear: he believed that defendants' representation was deficient to the point of professional misconduct and did not want defendants to continue acting on his behalf. This conclusion is unaffected by Kremer's affidavit maintaining that he did not terminate defendants' services until they served him with the interpleader complaint on February 5, 2018, because "summary disposition cannot be avoided by a party's conclusory assertions in an affidavit that conflict with the actual historical conduct of the party." *Bergen v Baker*, 264 Mich App 376, 389; 691 NW2d 770 (2004).

Because defendants stopped representing Kremer no later than May 26, 2017, MCL 600.5805(8) required commencement of Kremer's malpractice action within two years of that date.[5] Kremer did not sue defendants until October 2, 2019, several months after the two-year

---

[3] Kremer arguably discharged defendants as early as April 22, 2017, by virtue of his demand letter sent that day. That letter contained language strongly suggesting that Kremer discharged defendants, or intended to do so. For example, Kremer demanded distribution of the arbitration proceeds, less defendants' legal fees and a specified amount for a disputed medical bill. He also stated that, despite attempting "for five months to work with" defendants, he saw "no other way of resolving this situation," and indicated that the AGC could "determine the rest." Although the April 22, 2017 letter did not explicitly discharge defendants, as defendants note, we require "nothing so formal." See *Wright*, 279 Mich App at 536-537.

[4] Kremer said that he "decided not to sign your fee agreement at this time." As he had already signed the fee agreement when defendants presented it to him in person, Kremer's refusal is more accurately characterized as a refusal to return the signed agreement that he took with him after the meeting.

[5] The discovery rule in MCL 600.5838(2), which permits a malpractice action to be commenced within six months after the plaintiff discovered or should have discovered the claim, does not operate to extend the limitations period in this case. Kremer questioned defendants' representation in April 2017—if he did not implicitly discharge them at that point—and submitted a request for investigation to the AGC in May 2017.

limitations period expired. The trial court, therefore, erred by denying defendants' motion for summary disposition.[6]

## IV. CONCLUSION

For the reasons stated above, we reverse and remand for entry of an order granting defendants' motion for summary disposition. We do not retain jurisdiction.

/s/ Anica Letica
/s/ Deborah A. Servitto
/s/ Noah P. Hood

---

[6] Because we conclude that the limitations period issue is dispositive, we decline to address defendants' argument regarding whether Kremer needed an expert to support his legal malpractice claim.