*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SARAH LAM,

        Plaintiff-Appellant,

v

MEIJER, INC.,

        Defendant-Appellee,

and

JOHN DOE,

        Defendant.

UNPUBLISHED
December 19, 2025
9:19 AM

No. 372340
Wexford Circuit Court
LC No. 2023-030844-NO

Before: O'BRIEN, P.J., and BOONSTRA and WALLACE, JJ.

WALLACE, J. (*concurring in part and dissenting in part*).

I concur with the majority opinion's affirmance of the trial court's grant of summary disposition as to plaintiff's claim of ordinary negligence, because this case sounds in premises liability, not ordinary negligence.

Turning to plaintiff's premises liability claim, the majority finds that defendant's placement of a yellow "caution wet floor" cone near the entrance to its bottle-return room alone permits a finding that defendant did not breach its duty as a matter of law under the facts of this case. Properly viewing the direct and circumstantial evidence in the light most favorable to the non-movant, and likewise making all reasonable inferences in the non-movant's favor, as this Court must when conducting a de novo review of a motion for summary disposition pursuant to MCR 2.116(C)(10), I do not agree with that conclusion. As a result, I respectfully dissent.

The majority opinion relies on statements of premises liability law from *Estate of Trueblood v P&G Apts, LLC*, 327 Mich App 275, 285; 933 NW2d 732 (2019), and *Hoffner v Lanctoe*, 492 Mich 450, 460; 821 NW2d 88 (2012), both of which predate the Michigan Supreme Court's decision in *Kandil-Elsayed v F&E Oil, Inc*, 512 Mich 95; 1 NW3d 44 (2023). *Kandil-Elsayed* eliminated the common law "open and obvious doctrine and any exceptions to it under

the element of duty," and instead found that "the open and obvious nature of a danger—i.e., whether it is 'reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection[]'—is relevant to the defendant's breach and the plaintiff's comparative fault." *Kandil-Elsayed*, 512 Mich at 103-104, 144, 153 (internal citation omitted), quoting *Hoffner*, 492 Mich at 461.

> Because an 'open and obvious' analysis frequently includes an analysis of the plaintiff's own behavior—a failure to see a danger, appreciate a danger, or avoid a danger—situating the doctrine in the breach/comparative-fault analysis will allow the plaintiff's potentially negligent response to an open and obvious danger to reduce their damages, rather than cut off all recovery. [*Kandil-Elsayed*, 512 Mich at 144.]

*Kandil-Elsayed* additionally overruled the special aspects doctrine for premises liability claims that was the basis for the *Hoffner* decision. It held that, "[r]ather than conduct a narrow analysis of whether an obvious danger is 'effectively unavoidable' or poses an 'unreasonable risk of severe harm,' the fact-finder should consider whether 'the possessor should anticipate the harm despite such . . . obviousness," and further made clear that "whether a land possessor should anticipate harm from an otherwise open and obvious danger is a relevant inquiry under *breach*, not duty." *Kandil-Elsayed*, 512 Mich at 147-148, quoting 2 Restatement Torts, 2d, § 343A, p 218.

Notably, "the question whether the defendant owes an actionable legal duty to the plaintiff is one of law which the court decides,"[1] whereas "the question of breach—whether defendants' conduct in the particular case is below the general standard of care—is a question of fact for the jury." *Kandil-Elsayed*, 512 Mich at 112 (quotation marks and citations omitted). *Kandil-Elsayed* expressly overruled *Lugo v Ameritech Corp, Inc*, 464 Mich 512; 629 NW2d 384 (2001), and returned to decades of precedent predating *Lugo* by "reaffirm[ing] the traditional duty owed to invitees: the 'duty to exercise reasonable care to protect [them] from an unreasonable risk of harm caused by a dangerous condition of the land.' " *Id*. at 143 (second alteration in original), quoting *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495, 499; 418 NW2d 381 (1988).

*Kandil-Elsayed* implicitly overruled the holding from *Riddle v McLouth Steel Prods Corp*, 440 Mich 85; 485 NW2d 676 (1992), that there is "no duty to warn of an open and obvious danger." *Riddle*, 440 Mich at 95-100. Again, whether a hazardous condition presents an open and obvious danger is no longer tied to the plaintiff's obligation to demonstrate defendant owed them a duty as a matter of law. Rather, whether a defendant's conduct (including any placement of signage or other warnings or precautions) is a breach of their duty of reasonable care is a factual issue for the jury's determination, unless considering all the evidence (and the reasonable inferences to be

---

[1] "Duty is a threshold question of law for the court to decide before a case can get to a jury." *Id*. at 133.

drawn therefrom) in the non-movant's favor, no reasonable jury could conclude the defendant breached this general duty.[2]

> [A]s has always been true, a land possessor need only exercise *reasonable* care under the circumstances. As part of the breach inquiry, the fact-finder may consider, among other things, whether the condition was open and obvious and whether, despite its open and obvious nature, the land possessor should have anticipated harm to the invitee. If breach is shown, as well as causation and harm, then the jury should consider the plaintiff's comparative fault and reduce the plaintiff's damages accordingly. A determination of the plaintiff's comparative fault may also require consideration of the open and obvious nature of the hazard and the plaintiff's choice to confront it. [*Kandil-Elsayed*, 512 Mich at 148-149.]

> [I]n practice, the plaintiff's own account of their response to the danger is a key piece of evidence used by courts to determine whether, objectively, a danger was open and obvious. And this makes good sense. An actual person's response to a danger, in most cases, will be relevant to what a reasonable person might perceive about a danger. [*Id*. at 144-145.]

Turning to the facts of the present case, I would find that whether the yellow "caution wet floor" cone near the entrance to the bottle-return room is sufficient to fulfill defendant's duty of reasonable care, in light of the totality of the circumstances presented here, presents a question of fact for the jury's resolution.

The majority opinion contends that the yellow warning cone "plainly alerted anyone entering the bottle-return area that the area's floor was wet and posed a slipping hazard," and "plaintiff fails to adequately explain why [that warning] . . . did not have the legal effect of warning plaintiff about the dangerous condition." I respectfully disagree because, in my opinion, that analysis does not consider the adequacy or sufficiency of that warning or precaution as to the specific hazard that plaintiff encountered in the light most favorable to plaintiff.

> Included in the analysis of whether defendant breached a duty is whether the condition was open and obvious. The consideration of defendant's precautions and the analysis of the open and obvious nature of the condition go hand-in-hand, as the precautions were aimed at increasing the visibility of the step. [*Huss v Albert Chevrolet, Inc*, unpublished opinion per curiam of the Court of Appeals, issued December 9, 2024 (Docket No. 368428), p 6.[3]]

---

[2] MCR 2.116(G)(5); *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999); *Downey v Charlevoix Co Bd of Road Comm'rs*, 227 Mich App 621, 626; 576 NW2d 712 (1998); *Bergen v Baker*, 264 Mich App 376, 387; 691 NW2d 770, 777 (2004).

[3] "Although MCR 7.215(C)(1) provides that unpublished opinions are not binding under the rule of stare decisis, a court may nonetheless consider such opinions for their instructive or persuasive

Likewise, here the placement of the yellow "caution wet floor" cone near the entrance to the bottle-return room is aimed at increasing invitees' awareness and thus the visibility of potential wet floor conditions in that room.

In this case, plaintiff offered evidence (and argument based thereon) as to why such warning was inadequate and insufficient to establish that no reasonable jury could conclude the defendant breached its general "duty to exercise reasonable care to protect [invitees] from an unreasonable risk of harm caused by a dangerous condition of the land." *Id*. at 143 (quotation marks and citation omitted). Plaintiff notes that the bottle-return room surveillance video depicts an employee of defendant who previously mopped up fluid that had leaked onto the floor in front of the bottle-return machines approximately 25 minutes before her fall. At his deposition, that employee testified that, just seconds before plaintiff's fall, he walked through the bottle-return room, grabbed a cart to clear it out of the area, noted the accumulation of additional fluid in that area of the floor at that time, and indicated his intent to again take care of it upon returning from removing the cart—thereby acknowledging the dangerous condition that needed to be addressed. Thus, instead of actually remedying the dangerous condition, the employee continued to wheel the cart out of the room. Further, he acknowledged that he provided no warning to plaintiff, who was using a bottle-return machine in the immediate vicinity of that imminent danger, at that time. This employee also testified (and the surveillance video confirms) that the yellow warning cone was not placed in the immediate vicinity of the area in front of the bottle-return machines where the fluid was continuously accumulating and seeping toward the center of the room, but rather, near the entrance of the room, many feet away. This made the yellow warning cone more of a general warning that the floor could be wet in the room rather than a specific warning as to a specific puddle of fluid adjacent to the specific area where plaintiff was standing. The employee claimed the yellow warning cone was placed there to allow people to navigate their carts towards the machine, but that "ideally" he would have the cone placed near to where the floor actually got wet, i.e., such placement would be more adequate and effective in providing invitees with a warning regarding the ongoing hazardous condition.

Plaintiff testified during her deposition that she had not previously seen liquid on the floor in previous use of that store's bottle-return room and likewise did not see any fluid accumulation on the floor the day of her fall, until after she was writhing in pain on the floor. She also noted that the yellow warning cone was not anywhere near the liquid she slipped on and that "it really should have been right on the puddle of liquid." She further testified that she was walking carefully, paying attention, looking where she was going, and being alert while walking in the bottle-return room, but that she nonetheless did not observe the puddle of fluid that she slipped on until after she fell (such that it was not to be seen upon casual inspection).

Plaintiff acknowledged that she saw the caution sign near the entrance when she entered, and testified that she interpreted the sign to mean "to be cautious" and "to walk slowly" and "pay attention." Plaintiff also said that it was "common sense" that "you need to be careful" in a bottle-return area because "there could be liquid" on the ground. She testified that she acted accordingly

---

value." *Kennard v Liberty Mut Ins Co*, 341 Mich App 47, 53 n 2; 988 NW2d 797 (2022) (quotation marks and citation omitted).

and was careful to watch for and avoid stepping into wet spots on the floor, but that she nonetheless did not see any accumulation of fluid on the ground prior to her fall.

The majority opinion asserts that "a plaintiff can almost always argue that a land possessor could do more to warn about a hazardous condition on the land, which is presumably why that is generally not the relevant inquiry." It then quotes the Michigan Supreme Court decision in *Hoffner*, that, again, addressed the special aspects doctrine for premises liability claims that *Kandil-Elsayed* overruled: "Perfection is neither practicable nor required by the law," and courts cannot impose a requirement on a landowner "to make ordinary [conditions] foolproof." *Hoffner*, 492 Mich at 460 (quotation marks and citation omitted) (alteration in original).[4]

But, in light of *Kandil-Elsayed*, the adequacy or sufficiency of any warning or precaution and whether other actions or precautions were readily available and appropriate in light of the dangerous condition presented is evaluated in the totality of the circumstances in determining whether there is an issue of material fact as to the element of breach. *Kandil-Elsayed*, 512 Mich at 148. Further, finding an issue of material fact for the jury's consideration as to the element of breach in light of this evaluation *does not* amount to demanding perfection or that the conditions of the premises be foolproof. Defendants owe this duty to plaintiff regardless of plaintiff's knowledge of the hazard by way of a warning or other precaution (such as the yellow warning

---

[4] *Hoffner* held that an icy sidewalk at the sole entrance to a gym was not a special aspect of the condition that imposed an obligation on the premises possessor to remedy the condition despite its open and obvious nature, meaning that the possessor did not owe any duty to the plaintiff in that case. The decision in *Kandil-Elsayed* implicitly overruled the *holding* in *Hoffner* (that the special aspects doctrine, as an exception to the open and obvious doctrine, was inapplicable on its facts). Despite that implicit overruling, the Court indicated that it still agreed with *Hoffner* regarding two principles (1) the preexisting common law principle that landowners are not insurers; and (2) that the doctrine of comparative negligence requires both landowners, and those who come upon the land, to exercise reasonable care. More specifically, the Court noted that, "[w]e agree with the notion that 'landowners are not insurers.'" *Kandil El-Sayed*, 512 Mich at 147, quoting *Hoffner*, 492 Mich at 459,. That common law principle was already a fundamental rule in Michigan more than 80 years ago. *Bradley v Burdick Hotel Co*, 306 Mich 600, 604; 11 NW2d 257 (1943) ("While it is a fundamental rule needing no citations that the one in lawful control of premises is not an insurer of the safety of an invitee . . .") The Court also agreed that " 'both the possessors of land and those who come onto it' must 'exercise common sense and prudent judgment when confronting hazards on the land.' " *Kandil El-Sayed*, 512 Mich at 147, quoting *Hoffner*, 492 Mich at 459. The Court went on to hold that "[w]hile the open and obvious nature of a condition, assessed by asking whether 'it is reasonable to expect that an average person with ordinary intelligence would have discovered [the dangerous condition] upon causal [sic: casual] inspection,' remains relevant, it is a question of breach and comparative fault, not duty." *Kandil-Elsayed*, 512 Mich at 153 (second alteration in original), quoting *Hoffner*, 492 Mich at 461. Thus, to the extent that *Hoffner* remains good law, it appears to be limited to recitations of preexisting common law that were not overruled by *Kandil El-Sayed* and the issue of comparative negligence. *Id*. at 147, 153.

cone at the entrance to the bottle-return room) or whether the condition was open and obvious upon casual inspection. Again, the issue of whether defendant breached that duty is a question of fact unless no reasonable jury could conclude that defendant breached that general duty when viewing the evidence in the light most favorable to the nonmovant. Could a reasonable jury find that, when the employee was confronted with the puddle of fluid on the floor, he breached the duty to protect invitees from that dangerous conditions when he failed to clean up the puddle and, instead, continued to remove a cart from the room? Yes, I believe a reasonable jury could certainly make that finding because it is consistent with *Kandil-Elsayed* and the decades of precedent predating *Lugo*, upon which *Kandil Elsayed* relies. Could a reasonable jury find that, when the employee was confronted with the puddle, it was not reasonable for the employee to fail warn plaintiff, or anyone else standing close by, about that specific puddle of liquid in the vicinity? Yes, a reasonable juror could likewise make that finding because it is also consistent with current Michigan law, as described herein. Considering the facts of this case, a jury should determine whether defendant exercised reasonable care to protect plaintiff from "an unreasonable risk of harm caused by a dangerous condition of the land" and, if not, the jury should likewise evaluate what percentage of comparative negligence, if any, should be attributed to plaintiff. *Kandil-Elsayed*, 512 Mich at 143 (quotations marks and citation omitted).

For the foregoing reasons, while I concur with the majority's decision to affirm the grant of summary disposition to defendant as it pertains to plaintiff's claim of ordinary negligence, I respectfully dissent from the majority's decision to affirm the trial court's grant of summary disposition regarding plaintiff's premises liability claim pursuant to MCR 2.116(C)(10) and would instead reverse and remand for further proceedings on that claim.

/s/ Randy J. Wallace