*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DANIELLE CERVONE,

        Plaintiff-Appellant/Cross-Appellee,

v

WESTERN REAL ESTATE CORPORATION and
DONNA CRONBERGER,

        Defendants-Appellees,

and

B-DRY SYSTEM OF SOUTHEASTERN
MICHIGAN, INC.,

        Defendant-Appellee/Cross-Appellant.

UNPUBLISHED
August 26, 2021

No. 352820
Macomb Circuit Court
LC No. 2018-000740-CZ

Before: CAVANAGH, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

In this matter involving the sale of residential property, plaintiff appeals as of right, and defendant B-Dry System of Southeastern Michigan, Inc. cross-appeals as of right, the trial court's consent judgment after a jury verdict making final the jury's verdict against B-Dry. On appeal, plaintiff challenges the trial court's earlier opinion and order dismissing plaintiff's claims of common-law fraud and silent fraud against defendant Donna Cronberger (seller) and defendant Western Real Estate Corporation, as well as plaintiff's additional breach of warranty claims against B-Dry. On cross-appeal, B-Dry claims that the trial court erred by denying its motion for directed verdict and allowing evidence of consequential damages, and further posits that the verdict is against the great weight of the evidence. We affirm.

## I. BACKGROUND

Seller was the owner of a property in St. Clair Shores, Michigan, which she had owned and resided in since 1985. In September 2016, seller listed the home for sale through a listing

agreement with Lewis Gazoul, a real-estate agent with Western Real Estate. When listing the property, seller completed a Seller Disclosure Statement (SDS). Under the section titled "Property conditions, Improvement, & Additional Information," the SDS asked, "Has there been evidence of water?" and seller checked "yes." As an explanation, seller wrote, "Waterproofed B-Dry System w/lifetime warranties." Under "Other Items," the SDS asked if seller was aware of "[s]ettling, flooding, drainage, structural, or grading problems?" and seller checked "no." In listing the home for sale, Gazoul advised seller to leave all the documentation related to the B-Dry warranties on the counter for prospective buyers to review.

## A. HOME PURCHASE

Sometime in late 2016 or early 2017, plaintiff toured the subject property and, after reviewing the SDS, decided to make an offer. Plaintiff understood the SDS to say that the entire basement was waterproofed and that the home had no flooding or structural problems. Eventually, on March 1, 2017, plaintiff entered into a purchase agreement with seller to buy the property. On the same date, Gazoul sent plaintiff's agent a prior inspection report performed at the home, which a different prospective buyer had obtained. With respect to the basement walls, the inspector for the prior report stated:

> Walls are concrete block. Inspector could not rate all walls due to coverings. Cracks and stains noted in exposed areas. Monitor for further leakage/seapage [sic]. The seller is claiming the basement is waterproofed and still has remaining warranty. There is some form of repairs made to some portion of the walls. Inspector was unable to determine the age of the repairs or the effectiveness of the repairs made. The repairs are described, but the inspector accepts no liability for the repairs or their effectiveness. It is strongly recommended that you investigate the source of the repairs made with the current owner prior to closing. If possible, determine who made the repairs and what warranty if any remains.

With regard to "Moisture," the inspector stated, "Staining was observed: evidence of prior water penetration is noted."

Three days before plaintiff's scheduled home inspection, Gazoul informed plaintiff's agent that water had been identified in the basement. Plaintiff, upset about this news, said to her agent that she wanted to "call off the deal," but decided to wait and see what repairs would be recommended. Seller later emailed Gazoul stating, "False alarm, it was the dog's water bowl that went over." Gazoul forwarded this message to plaintiff's agent adding, "This might seem strange but read below. It seems that there was no water compromise."

When plaintiff received this information, she was satisfied and agreed to proceed with the sale pending her inspection of the property. The report eventually prepared by plaintiff's inspector noted with respect to the basement and crawl space: "Basement is finished[.] This basement was/is finished but the work is deteriorated by neglect, moisture and or poor and untimely repairs." With regard to the basement wall, the report stated:

> Minor settlement cracks noted, not significant at this time[.] Staining was observed: [e]vidence of prior water penetration is noted—[s]een at corners and

randomly on perimeter walls[.] Efflorescence seen on walls indicates the presence of periodic moisture. Water seepage may occur in the future. The best defense against water seepage is good drainage of soils near the foundation wall. See grading under landscaping. Deterioration noted to foundation walls is minor. Symptoms of prior water seepage are present. Paneling prevents viewing of primary basement wall material in areas[.] A water seepage control system is already in place.

After the inspection, plaintiff was unhappy with the condition of the home and sought $2,000 in concessions from seller for repairs. Seller agreed and the sale closed on April 14, 2017, with ownership of the property passing to plaintiff. According to plaintiff, seller gave her a copy of B-Dry's lifetime warranty for the basement at closing, and, about a week later, seller gave plaintiff additional documentation regarding the B-Dry system.

Plaintiff moved into the home in July 2017. Shortly thereafter, while making an unrelated repair, plaintiff removed the paneling from the southern basement wall. She discovered that the wall had holes and cracks from top to bottom, including exposed metal beams with plastic behind them. When plaintiff tugged on a corner of the plastic, chunks of concrete fell to the floor. Plaintiff eventually found that water seeped through these holes and cracks when it rained.

In September 2017, on the basis of her belief that the entire basement had been waterproofed, plaintiff contacted B-Dry. From B-Dry's records, plaintiff learned that the entire basement had not, in fact, been waterproofed. Instead, B-Dry had waterproofed sections of the basement over a period of years. This work is reflected in separate contracts for repairs, each of which contained a warranty guaranteeing the work completed:

- In November 1995, B-Dry waterproofed 34 feet of the north basement wall and 11 feet of the west basement wall and provided a lifetime warranty;

- In March 2015, B-Dry waterproofed 4 feet of the south basement wall and 14 feet of the west basement wall and provided a limited warranty subject to notice of transfer of ownership;

- In July 2016, B-Dry waterproofed all 24 feet of the east basement wall and provided a limited warranty subject to notice of transfer of ownership;

- In September 2016, B-Dry installed bracing along the southern wall to remediate structural issues and provided a limited warranty.

An engineering report that plaintiff obtained in October 2017 indicated that all four of the basement walls were bowing inward. By June 2018, plaintiff's engineer informed her that the walls had moved another 1.5 inches. In the same month, plaintiff sought repairs from B-Dry under the transferrable warranty, but B-Dry refused plaintiff's request.

## B. LAWSUIT

Plaintiff then filed the instant lawsuit alleging, as relevant to this appeal, claims of common-law fraud and silent fraud against both seller and Western Real Estate, and claims for breach of warranty against B-Dry. Fifteen days before the close of discovery, the parties filed cross-motions for summary disposition. Plaintiff asserted that summary disposition in her favor was proper on her claims of common-law fraud and silent fraud given that seller and Western Real Estate both allegedly hid, and lied about, the fact that the entire basement had been waterproofed, that water was leaking through the walls, and that structural defects existed. As to B-Dry, plaintiff posited that judgment in her favor should be granted because no question of fact existed that B-Dry breached its warranties. Seller countered that the trial court should dismiss the fraud claims against her because she made no material misrepresentation (affirmatively or otherwise) and acted in good faith in executing the SDS. Western Real Estate likewise asserted that the fraud claims against it should be dismissed because a release in the Purchase Agreement barred plaintiff's claims. Finally, B-Dry responded that summary disposition as to the warranty claims should be denied because its workmanship and materials were not defective and its warranties did not otherwise cover the damaged area.

After a hearing, the trial court granted summary disposition in favor of defendants, except with regard to a single claim for breach-of-warranty claim against B-Dry. The trial court dismissed the claims of common-law fraud and silent fraud against seller and Western Real Estate because plaintiff had failed to demonstrate that she reasonably relied on any alleged misrepresentations in light of the abundant evidence that plaintiff was "aware of ongoing water issues in the basement before agreeing to proceed to closing." The court also dismissed plaintiff's claims of common-law fraud and silent fraud against Western Real Estate on the basis that plaintiff had executed a release that barred her claims. As for plaintiff's claims against B-Dry, the trial court granted summary disposition in favor of B-Dry under MCR 2.116(I)(2) on plaintiff's breach of warranty claims for the 1995 Warranty, the 2015 Warranty, and July 2016 Warranty, reasoning that the terms of those agreements did not apply. The trial court allowed plaintiff's remaining claim against B-Dry with respect to the September 2016 Warranty to proceed to trial.

At the ensuing trial, plaintiff presented the expert testimony of Lawrence Lesniak, a structural and forensic engineer. Lesniak testified that he measured the south basement wall in October 2017, at which point it was bowing inward approximately 1½ inches. Lesniak testified that he measured the walls again in June 2018, at which point the south wall had moved inward another inch. In his opinion, the continued movement of the wall indicated that the channels (braces) that B-Dry had installed were failing. Lesniak stated that it was his professional opinion that "the channel was not strong enough to prevent further inward movement of the wall. So, the channel should have been a stronger channel." Before the close of evidence, B-Dry moved for a directed verdict, but the trial court denied the motion on the basis that evidence had been presented that the materials were defective.

Ultimately, the jury returned a verdict for plaintiff. It found that B-Dry properly installed the bracing systems, but there were defects in the material and/or workmanship; that B-Dry breached its limited warranty to plaintiff; and that plaintiff sustained monetary damages as a result of the defect in materials or workmanship in the amount of $11,500. Thereafter, the trial court

entered a consent judgment in plaintiff's favor, in the amount of the jury's award plus interest. Plaintiff now appeals by right and B-Dry cross-appeals by right.

## II. PLAINTIFF'S APPEAL

### A. PROPRIETY OF SUMMARY DISPOSITION

Preliminarily, plaintiff argues that summary disposition was premature as to all defendants because discovery had not yet closed when the parties filed their motions. We note, however, that plaintiff also moved for summary disposition at approximately the same date as seller and Western Real Estate, impliedly agreeing that the record was sufficiently developed for the consideration of dispositive motions. This is further supported by the fact that plaintiff did not argue in either her motion for summary disposition or in her response briefs that summary disposition was premature. In light of plaintiff's counsel deeming it proper for the trial court to decide the motions for summary disposition before the close of discovery, plaintiff cannot now claim that this action by the trial court was error. See *Clohset v No Name Corp*, 302 Mich App 550, 555; 840 NW2d 375 (2013) (recognizing "the well-established maxim that a party may not properly create error in a lower court and then claim on appeal that the error requires reversal").

Even if plaintiff had not consented to the propriety of dispositive motions, we would conclude that her argument is unpersuasive. Summary disposition is generally premature if discovery is incomplete on a disputed material issue. *Townsend v Chase Manhattan Mtg Corp*, 254 Mich App 133, 140; 657 NW2d 741 (2002). However, that discovery remains open does not automatically mean that summary disposition is inappropriate—"[t]he question is whether further discovery stands a fair chance of uncovering factual support for the opposing party's position." *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 292; 769 NW2d 234 (2009). A party may not rely on mere assertions or speculation, but must identify "a disputed issue and support[] that issue with independent evidence." *Id*.

Plaintiff argues that further discovery would have shed light on the explanation that water in the basement came from the dog's water bowl, and exposed further details about (1) a list of repairs that seller provided to Gazoul that plaintiff never received, (2) when B-Dry learned of plaintiff's purchase of the property, (3) why seller did not disclose repairs made in 1987, and (4) whether failed waterproofing contributed to the buckling of basement walls. Plaintiff, however, fails to explain how further discovery on these points would produce evidence establishing a genuine issue of material fact for trial on her claims of common-law fraud and silent fraud against seller and Western Real Estate, or for breach of warranty against B-Dry. Plaintiff also fails to adduce some independent evidence that further discovery will uncover factual support for her position. Absent independent evidence, plaintiff's laundry list of supposed helpful details amounts to speculation that there might be some favorable evidence in existence, which is insufficient to demonstrate that additional discovery stands a fair chance of uncovering evidence in support of her claims. Accordingly, we reject plaintiff's claim that summary disposition was premature.

### B. FRAUD CLAIMS

Plaintiff argues that the trial court erred by dismissing her claims of common-law fraud and silent fraud against seller and Western Real Estate. We disagree.

"This Court reviews de novo a trial court's ruling on a motion for summary disposition." *Bergen v Baker*, 264 Mich App 376, 381; 691 NW2d 770 (2004). The trial court granted summary disposition in relevant part under MCR 2.116(C)(10), which is proper if "there is no genuine issue about any material fact and the moving party is entitled to judgment or partial judgment as a matter of law." *Id.* In reviewing the trial court's decision, this Court "considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). "Where the burden of proof . . . on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists." *Id.* "If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted." *Id.* at 362-363. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

As stated in *Hi-Way Motor Co v Int'l Harvester Co*, 398 Mich 330, 336; 247 NW2d 813 (1976), to prove a claim of common-law fraud a plaintiff must show:

> (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. [Quotation marks and citation omitted.]

"Silent fraud is essentially the same except that it is based on a defendant suppressing a material fact that he or she was legally obligated to disclose, rather than making an affirmative misrepresentation." *Alfieri v Bertorelli*, 295 Mich App 189, 193; 813 NW2d 772 (2012). "[F]or the suppression of information to constitute silent fraud there must exist a legal or equitable duty of disclosure." *Roberts v Saffell*, 280 Mich App 397, 404; 760 NW2d 715 (2008), aff'd 483 Mich 1089 (2009).

Plaintiff argues that seller committed fraud when, on the SDS, she marked "no" in a box next to a question whether she was aware of any structural defects in the home. Statements in an SDS are governed by the Sellers Disclosure Act (SDA), MCL 565.951 *et seq*. In *Bergen*, 264 Mich App at 385, this Court interpreted the SDA in light of the common law and concluded, "Liability is precluded for errors, inaccuracies, or omissions in a [SDS] that existed when the statement was delivered, where the seller lacked personal knowledge, and would not have had personal knowledge by the exercise of ordinary care, of any error, inaccuracy, or omission and thus proceeds in good faith to deliver the disclosure statement to the buyer." (Footnote omitted.) "Good faith" in the context of the SDA "means honesty in fact in the conduct of the transaction." MCL 565.960.

It is uncontested that in July 2016, seller contracted B-Dry to perform waterproofing in the basement, and B-Dry noted that there was some bowing and cracks in the wall. Shortly thereafter, in August 2016, seller agreed to a plan with B-Dry to have bracing installed on the south wall of

the basement, and B-Dry added the structural support on September 1, 2016. Seller averred in an affidavit that when she subsequently completed the SDS, she believed that there were no longer structural problems with the home because she had just paid B-Dry over $4,000 to have those problems remediated. This evidence sufficiently established that seller did not have personal knowledge of any structural problems with the property when she completed the SDS, and, if seller did not have personal knowledge of the structural problems, then she could not have suppressed that fact. See *Roberts*, 280 Mich App at 414 (explaining that, for a claim of silent fraud premised on an "item . . . specified for disclosure on the SDS," a transferor must "possess[] personal knowledge about the item" allegedly suppressed). In response, plaintiff failed to produce any evidence tending to suggest that seller had personal knowledge of ongoing structural problems, that seller would have had such knowledge through the exercise of ordinary care, or that seller's statements on the SDS were otherwise made in bad faith.[1] Accordingly, plaintiff has failed to establish a question of fact whether seller had personal knowledge that her statements in the SDS about structural issues were false, and liability is precluded for this claim.[2]

On appeal, plaintiff argues that there is a question of fact whether seller had personal knowledge of the structural issues because she covered up the braces that B-Dry installed. As observed by the trial court, however, it was undisputed that a brace was visible in a closet, so the fact that bracing had been installed was not concealed. Indeed, one of the inspection reports that plaintiff received before closing noted that repairs had been made to the wall and "strongly recommended" contacting seller for "the source of the repairs" and any warranties. Regardless, that seller built a wall over the braces that she believed fixed any structural issues does not tend to establish that she had personal knowledge of ongoing structural problems when she completed the SDS.

Plaintiff next argues that seller and Western Real Estate committed (1) common-law fraud by representing that there were no ongoing issues with water at the property and (2) silent fraud by failing to disclose that there were ongoing issues with water at the property. The trial court concluded that these claims for fraud were barred because plaintiff "could not reasonably rely on any alleged misrepresentations regarding prior or ongoing water issues in the basement or warranties" in light of the information plaintiff received before closing. We agree.

To sustain a claim of common-law fraud, it is not enough that a plaintiff rely on a misrepresentation—the reliance must be reasonable. See *Foreman v Foreman*, 266 Mich App

---

[1] In a reply brief on appeal, plaintiff asserts that seller did not act in good faith when completing the SDS because she was aware of the repairs B-Dry had completed. "Good faith" under the SDA "means honesty in fact in the conduct of the transaction." MCL 565.960. That seller was aware of the repairs does not suggest that she did not honestly believe that B-Dry adequately addressed the structural issues such that there were no longer any structural problems with the property.

[2] In one sentence on appeal, plaintiff asserts that Western Real Estate committed silent fraud by failing to disclose the structural bracing to plaintiff. Plaintiff fails to expand this argument further or otherwise cite any caselaw to support it, thereby abandoning it. See *Mitcham v City of Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959).

132, 141-142; 701 NW2d 167 (2005); *Bergen*, 264 Mich App at 389; *Novak v Nationwide Mut Ins Co*, 235 Mich App 675, 690-691; 599 NW2d 546 (1999). A claim for silent fraud likewise requires a plaintiff's reliance to be reasonable. See *UAW-GM Human Resource Ctr v KSL Recreation Corp*, 228 Mich App 486, 504; 579 NW2d 411 (1998).

Before deciding to close on the property, plaintiff was advised to access the B-Dry documents (which reflected that waterproofing did not cover the entire basement[3]), she was given the SDS stating that there had been evidence of water in the basement, and she had in her possession two recent inspection reports that noted the presence of past and likely current water in the basement. The first inspection report noted cracks and stains in exposed areas, evidence of prior water penetration, and directed the prospective buyer to monitor for further leakage and to follow up with the company that made any repairs to determine the existence of any warranties. The second inspection report, prepared by plaintiff's inspector, noted that the basement was finished, but that it was in a deteriorated condition because of neglect, moisture, and untimely repairs. The same report noted evidence of prior water leakage, but added that efflorescence on the walls indicated the presence of periodic moisture and that more water seepage may occur in the future.[4] Under these circumstances, in which the presence of periodic moisture was noted, warnings were made to monitor for future leakage, and advice was given to follow up with the company that made the repairs, no reasonable juror could conclude that plaintiff's belief that the basement was fully waterproofed such that it did not have any ongoing issues with water was reasonable. Rather, the reports in her possession would have put her on notice of the current presence of moisture in the basement and the possibility of future water seepage. Accordingly, the trial court properly granted summary disposition in favor of seller and Western Real Estate on plaintiff's claims for fraud.

While not addressed by the trial court, we also conclude that plaintiff has failed to establish a question of fact whether seller and Western Real Estate knew that there were ongoing water issues in the basement. With respect to seller, plaintiff alleges that she committed fraud when she marked "no" on the SDS when asked whether she was aware of any flooding or drainage issues on the property. Shortly before completing the SDS, seller had B-Dry on the property to waterproof portions of the basement. Thus, when she completed the SDS, her statements about

---

[3] To the extent that plaintiff claims that seller and Western Real Estate committed fraud by allegedly making misrepresentations (or withholding information) about the areas that B-Dry waterproofed or the terms of B-Dry's warranties, her claims fail because "[t]here can be no fraud where a person has the means to determine that a representation is not true." *Nieves v Bell Indus, Inc*, 204 Mich App 459, 464; 517 NW2d 235 (1994).

[4] Plaintiff contends on appeal that, when viewed in the light most favorable to plaintiff, the inspection reports only show evidence of past water problems in the basement. This argument is simply not tenable—plaintiff's inspection report states that the efflorescence "on the walls indicates the presence of periodic moisture. Water seepage may occur in the future." There is simply no way to conclude that this only suggests past water problems.

water in the basement were made in good faith and in reliance on the contractor, B-Dry, that she hired to remediate any water issues with the basement.

On appeal, plaintiff argues that the fact seller had water issues with the basement over the years and had them fixed is indicative of seller's knowledge and failure to disclose the ongoing water problems. However, the home's history of repairs does not render the statements seller made in the SDS false, given that seller acted to have the issues fixed before listing the home for sale. Further, that seller did not disclose a 1987 waterproofing repair is immaterial, as is the allegation that seller failed to disclose that the *entire* basement had not been waterproofed. Neither of these points show that seller's statements in the SDS that there were no flooding or drainage issues were knowingly untruthful.[5]

Plaintiff also argues that seller knew of the water issues before the sale because she reported water issues in March shortly before the sale, and then allegedly lied and said that it was just a spilled water bowl. Nothing in the record, however, suggests that seller lied when she said that the water she found in the basement was from her dog's water bowl; plaintiff's contention that seller lied about the dog bowl to hide her knowledge of the leakage, while plausible, is speculative. Plaintiff has not come forth with evidence, circumstantial or otherwise, that would allow a reasonable trier of fact to conclude that seller knew her statements to be false. Under these circumstances, we conclude that no question of fact exists that seller neither made a false representation nor suppressed a material fact.

As for her claim against Western Real Estate, plaintiff argues that it committed fraud when its agent, Gazoul, forwarded a message from seller in which she stated, "False alarm, it was the dog's water bowl that went over," and added to his forwarded email, "This might seem strange but read below. It seems that there was no water compromise." Thus, the only statement attributable to Western Real Estate is, "This might seem strange but read below. It seems that there was no water compromise."

No reasonable juror could conclude that Gazoul made this statement knowing that it was false or with a reckless disregard for the statement's truth. Gazoul forwarded an email, made a comment about the email ("This might seem strange") and surmised the email's content ("It seems that there was no water compromise"). Gazoul was merely repeating what seller told him about

---

[5] Plaintiff likens this matter to *Bergen*, 264 Mich App at 376, arguing that, just as in *Bergen*, the SDS here suggests a past problem that had been corrected, meaning that seller intentionally misled plaintiff to believe the problem had been rectified while knowing that it had not. However, unlike the plaintiff in *Bergen*, plaintiff here has not come forth with evidence to suggest that seller knew her statements were false at the time the SDS was executed. In *Bergen*, there was testimony that the severity of the leak led the plaintiff's contractor to conclude that the at-issue leak was likely active before the sale. *Id*. at 378-388. Here, there is no circumstantial evidence to suggest that seller knew the problem remained after the repairs she had made. In fact, the evidence suggests the opposite, given that plaintiff had to remove the paneling from the south basement wall to discover the ongoing water issues.

the condition of the property, not affirmatively representing any independent knowledge about the condition of the property.[6]  There is nothing in the record suggesting that Gazoul knew what the seller told him was false when he repeated the information to plaintiff's agent.  Indeed, plaintiff does not even contend as much.  Instead, she contends that Gazoul made the statement in reckless disregard for its truth because seller had previously sent Gazoul a list of repairs that seller had done to address water issues in the basement.  This, however, does not suggest that Gazoul made the statement with reckless disregard for its truth.  The past repairs suggest a history of water issues— information that was disclosed in the SDS.  That repairs were made does not, standing alone, suggest ongoing issues.  Accordingly, plaintiff failed to present evidence on which a reasonable juror could conclude that Gazoul made a false statement knowing that it was false or with a reckless disregard for the statement's truth.

## C.  BREACH OF WARRANTY CLAIMS AS TO B-DRY

Plaintiff next challenges the trial court's dismissal of her breach of warranty claims under MCR 2.116(I)(2), as to the 1995 Warranty, 2015 Warranty, and July 2016 Warranty.  Plaintiff contends that summary disposition was precluded because material questions of fact remained about whether the 1995 Warranty applied to the entire basement and whether B-Dry received timely notice of transfer as to the 2015 and July 2016 Warranties.  We disagree.

"The trial court properly grants summary disposition to the opposing party under MCR 2.116(I)(2) if the court determines that the opposing party, rather than the moving party, is entitled to judgment as a matter of law." *Washburn v Michailoff*, 240 Mich App 669, 672; 613 NW2d 405 (2000).

In November 1995, B-Dry contracted with seller for waterproofing of 34 feet of the north wall and 11 feet of the west wall with the B-Dry system.  The work order noted water in the wall and cracking in the north and west walls.  The related 1995 Warranty provided:

> Licensee fully warrants the AREAS WATERPROOFED with the B-DRY® System to be free from water leakage for THE FULL LIFE OF THE STRUCTURE, regardless of ownership, and will, at NO ADDITIONAL COST TO THE CUSTOMER, provide such LABOR AND MATERIALS as required.  Should service be required, notify the Licensee. This Warranty does not cover: backing up or plugging of sewers; floods; condensation caused by high humidity; damp spot discoloration of walls; or sump pumps, which are covered by separate manufacturer's warranty.  Ground water containing rust algae will require the owner of the structure to perform a routine maintenance program.

---

[6] Plaintiff argues that this Court should take Gazoul's statement out of context and read it as asserting "that there was no water compromise" to the property.  While this Court views the evidence in the light most favorable to the nonmoving party when deciding a motion for summary disposition, see *Quinto*, 451 Mich at 362, it does not take evidence out of context, as plaintiff suggests.

On March 6, 2015, B-Dry contracted with defendant seller to install the B-Dry system on four feet of the south wall and 13 feet of the west wall. The work order again noted water in the wall. The related 2015 Warranty provided:

> Subject to the JOB PLAN and the provisions and procedures set forth herein, FOR SO LONG AS THE ORIGINAL PURCHASER OF THE B-DRY® SYSTEM OWNS THE STRUCTURE LISTED ABOVE, B-Dry® System of Southeastern Michigan, Inc. provides the following limited warranty: If there is leakage in the areas where the B-Dry® System was installed, B-Dry® will provide the labor and materials required to repair the B-DRY® SYSTEM at NO ADDITIONAL COST TO THE CUSTOMER. Should service be required, please notify B-Dry® at the phone number or address set forth above. Only authorized B-Dry® technicians are approved to provide warranty services hereunder. Should you sell or otherwise transfer your Structure to a new owner, this Warranty shall expire two (2) years after the effective date of such transfer. There after subject to local legal requirements, B-Dry® may offer for sale an Extended Warranty to the new owner and any subsequent owners. The price and conditions of any such Extended Warranty will be determined at the time of sale of the Extended Warranty. If the new owner is interested in an Extended Warranty, please contact the B-Dry® office at the above address. **IN ORDER FOR THE WARRANTY TO TRANSFER TO THE NEW OWNER, WRITTEN NOTIFICATION OF THE SALE MUST BE RECEIVED IN THE B-DRY OFFICE NO LATER THAN 45 DAYS AFTER THE DATE OF CLOSING.**

The July 13, 2016 work order noted water in the wall and "water over, under footer" and that the south basement wall was bowed and cracked. Further, in the notes portion of the work order, the technician wrote that paneling had been removed from the south wall and "no wall bracing needed per customer (not at this time)." According to the work order, B-Dry installed B-Dry waterproofing system on the entire 24 feet of the east wall. The July Warranty apparently provided the same language as the 2015 Warranty.

Plaintiff closed on the property on April 14, 2017. She moved into the home three months later, and shortly thereafter discovered that water seeped through the south basement wall and that all the basement walls were bowing. Plaintiff first contacted B-Dry in September 2017 to inquire what repairs had been made and, in June 2018, plaintiff requested that B-Dry make repairs pursuant to the warranties, but B-Dry refused.

In granting summary disposition in favor of B-Dry on plaintiff's claims for breach of the 1995, 2015, and July 2016 Warranties, the trial court reasoned:

> Plaintiffs affidavit concedes she closed on the property on April 14, 2017 but did not first contact defendant B-Dry System until September 2017.

> The March 2015 and July 2016 warranties required plaintiff to notify defendant B-Dry System of her ownership of the subject property with forty-five days of closing in order to transfer those warranties. Forty-five days from April 14, 2017 is May 29, 2017. As plaintiff admittedly did not contact defendant B-Dry

-11-

System until September 2017, she does not have an enforceable contract interest in the March 2015 and July 2016 warranties.

Plaintiff has proffered evidence suggesting the south basement wall seeps water. However, neither the November 1995 nor the September 2016 warranty provides for waterproofing of the south basement wall.

At the outset, we note that plaintiff's breach of warranty claim, as pleaded in her complaint, is premised on a breach of contract theory. To establish a breach of an express warranty, the plaintiff must allege the existence of warranties, their breach, and damages as a proximate result of the breach. See *Hill v Harbor Steel & Supply Corp*, 374 Mich 194, 203-204; 132 NW2d 54 (1965) (recognizing that breach of warranty claims traditionally sound in contract).

As to the 1995 Warranty, it provides that the areas waterproofed with the system to be free from leakage for the full life of the structure, regardless of ownership. Plaintiff argues that the warranty applies to all areas of the basement that had been waterproofed with the B-Dry system, including work done later. Such an interpretation—that a warranty for certain work performed applies to all prospective, yet not-done work—strains credulity. The only permissible interpretation of the 1995 Warranty is that it applies to the work performed under that contractual agreement: the waterproofing of the north wall. That B-Dry allegedly refused to rectify the water leakage of the south wall or fix the bowing of the basement walls does not touch on the waterproofing of the north wall. In other words, B-Dry's refusal to make the requested repairs did not breach the 1995 Warranty. The trial court properly dismissed plaintiff's breach of warranty claim premised on the 1995 Warranty.

As to the 2015 Warranty and July 2016 Warranty, neither of those warranties apply to the bowing of the basement walls, and the 2015 Warranty only applies to waterproofing of 13 feet of the west wall and 4 feet of the south wall, while the July 2016 Warranty applies to waterproofing of 24 feet of the east wall. Plaintiff's claims for breach of warranty relate to the defective condition of the south wall. The July 2016 Warranty, which related to work on the east wall, is therefore inapplicable. And while the 2015 Warranty covered 4 feet of waterproofing on the south wall, plaintiff does not specifically allege that the waterproofing of that 4-foot section failed. Regardless, to the extent these warranties could apply at all, it is undisputed that plaintiff failed to notify B-Dry of the transfer of ownership within 45 days of closing. By plaintiff's own admission, she closed on the property on April 14, 2017, but she did not contact B-Dry until September 2017—well after the 45-day period.[7] Accordingly, the trial court also properly dismissed plaintiff's breach of warranty claims premised on the 2015 Warranty and July 2016 Warranty.

---

[7] Plaintiff takes issue with the fact that the July 2016 Warranty was never produced in the proceedings below and that the trial court accepted B-Dry's assertion that it contained the same language as to the 45-day notice period. This point is immaterial, given that the July 2016 Warranty applied to the east basement wall and plaintiff does not allege that B-Dry breached the warranty for faulty materials or workmanship on the east-wall waterproofing.

III.  B-DRY'S CROSS-APPEAL

A.  DIRECTED VERDICT

On cross-appeal, B-Dry argues that the trial court erred by denying B-Dry's motion for directed verdict.  "This Court reviews de novo a trial court's decision with respect to a motion for directed verdict."  *Badiee v Brighton Area Sch*, 265 Mich App 343, 359; 695 NW2d 521 (2005).  Motions for directed verdict may be granted only "when no material factual questions exist on which reasonable minds could differ."  *Id*.

As noted, seller contracted B-Dry to address the cracking and bowing in the south wall after B-Dry notified seller of the cracking and bowing in July 2016.  Seller had the work completed in September 2016.  The September 1, 2016 work order reflects the installation of seven superior wall braces along the south wall, intended to "stabilize the wall in its current position."  The work order provided a limited warranty, as follows:

> The work to be performed under this agreement is warranted for a period of 10 years against all defects in material and workmanship.  This warranty is transferable in its entirety to subsequent property owners,  If any significant inward movement of the wall occurs in the area directly behind or in between the SUPERIOR wall braces, then we will, at no COST OR EXPENSE TO THE PROPERTY OWNER correct any defect in material or workmanship that may have occurred in [order] to stabilize such area.  Homeowner would be responsible to provide access to the area.
>
> THE FOREGOING IS OUR SOLE WARRANTY.  ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY WARRANTY OF MERCHANTABILITY AND WARRANTY FOR FITNESS FOR PURPOSE, ARE EXCLUDED.  The owner's exclusive remedy shall be for correction of any defect in workmanship and materials, as set forth above. In no event shall [B-Dry] be liable for consequently damages, regardless of whether the claim is based on warranty; contract, tort, or otherwise.

In her amended complaint, plaintiff alleged that B-Dry breached this warranty.  The trial court allowed this claim to proceed to a jury trial, at which plaintiff presented evidence from her expert, Lesniak, that the wall braces were not strong enough to prevent the wall from continuing to bow inward.

On appeal, B-Dry's argument that its motion for directed verdict was erroneously denied is conclusory.  B-Dry asserts that plaintiff failed to establish that there were defects in the workmanship and that the trial court, in denying the motion, wrongly conflated "defect" with "fitness for purpose."  B-Dry makes no attempt to explain the relevant law, does not explain how its assertions relate to the elements of the alleged breach of warranty, does not provide any explanation why Lesniak's testimony was insufficient to create a question of fact or cite any authority supporting its assertion to that effect, and fails to explain why the trial court's reasoning was incorrect.  Instead, B-Dry's argument amounts to a bald assertion that plaintiff failed to proffer evidence that defects existed and a summation of provisions of the Uniform Commercial Code (UCC) that limit exclusions of express and implied warranties.  For these reasons, B-Dry's claim

is abandoned. See *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002).

Even if B-Dry had not abandoned its argument, we would nonetheless conclude that the trial court properly denied B-Dry's motion for directed verdict. At trial, Lesniak testified that the materials were defective, given that the channels had failed to prevent the south wall from bowing further inward. B-Dry presented competing testimony that the materials and workmanship were competent. Because reasonable minds could differ on the factual question of whether the materials were defective such that B-Dry breached the warranty, directed verdict was not proper. Accordingly, the trial court did not err by denying B-Dry's motion for directed verdict.

## B. EVIDENCE OF DAMAGES

B-Dry next argues that plaintiff's damages should have been limited to the cost of material and labor to make the necessary repairs—$4,240—and that plaintiff should not have been allowed to ask the jury for $57,000, which reflects consequential damages. Once again, B-Dry's argument is too cursory to effectively address. B-Dry does not specify why the trial court erred, what law or rule would have precluded the admission of the evidence, or how the outcome would have been different had the alleged error not occurred. Accordingly, we deem this claim abandoned also. See *Yee*, 251 Mich App at 406.

Nonetheless, even if B-Dry had not abandoned its claim, we would conclude that no error occurred. B-Dry did not object when plaintiff presented evidence of consequential damages at trial. Because any claim of evidentiary error is not preserved, our review is for plain error affecting substantial rights. See *Henderson v Dep't of Treasury*, 307 Mich App 1, 9; 858 NW2d 733 (2014). For B-Dry to be entitled to relief under this standard, it must show (1) that an error occurred, (2) that the error was plain, and (3) that the plain error affected B-Dry's substantial rights. *Id*.

On appeal, B-Dry asserts that an error occurred by allowing evidence of consequential damages, but the controlling law indicates that plaintiff would be entitled to consequential damages under the circumstances of this case. As plaintiff notes, when the exclusive remedy of a warranty fails, remedy may be had as otherwise provided by the UCC. MCL 440.2719(2) ("Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this act."). Because the south wall of plaintiff's basement continued to bow inward after B-Dry installed the bracing and B-Dry refused to honor the warranty by either replacing or repairing the system, the warranty failed in its essential purpose. Consequently, plaintiff was entitled to pursue other remedies, including consequential damages, and it was not error for the trial court to permit plaintiff to present her evidence of damages. See *King v Taylor Chrysler-Plymouth, Inc*, 184 Mich App 204, 213; 457 NW2d 42 (1990) (holding that warranty failed in essential purpose when warrantor did not repair vehicle and the plaintiff was permitted to pursue consequential damages). In any event, B-Dry requested that the trial court not instruct the jury on either consequential or reliance damages and the trial court agreed, only instructing the jury on traditional contract damages. Under these circumstances, B-Dry has failed to identify any plain error affecting its substantial rights.

## C. JUDGMENT NOTWITHSTANDING THE VERDICT

Finally, B-Dry argues that the jury's finding of a defect in material or workmanship is against the great weight of the evidence and that the verdict should be set aside. B-Dry did not move for a new trial in the proceedings below on the basis that the verdict was against the great weight of the evidence. A defendant waives a claim that the verdict is against the great weight of the evidence if it does not move for a new trial in the lower court. *Brown v Swartz Creek Mem Post 3720-Veterans of Foreign Wars, Inc*, 214 Mich App 15, 27; 542 NW2d 588 (1995). While we may exercise our discretion to review this claim for a miscarriage of justice, B-Dry has not made arguments implicating such a miscarriage. B-Dry's arguments relate to allegedly inconsistent findings of the jury, but B-Dry fails to cite any caselaw to support its argument that such inconsistent findings propagate a miscarriage of justice. Thus, it seems that B-Dry simply lost a money judgment, and more than the loss of a money judgment is necessary to show miscarriage of justice in the civil context. *Napier v Jacobs*, 429 Mich 222, 233-234; 414 NW2d 862 (1987). Accordingly, defendant B-Dry waived this claim.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Colleen A. O'Brien
/s/ James Robert Redford

-15-